# PICKETT v. GREEN'S GARAGE—245 S. W. (2d) 415.

Eastern Section.   May 30, 1951.

Petition for Certiorari denied by Supreme Court, August 31, 1951.

W. L. Tillett, of Chattanooga, for plaintiff in error.

Ben Cash, of Chattanooga, for defendant in error.

HOWARD, J.   This suit originated in the Court of General Sessions of Hamilton County by summons and attachment filed by the plaintiff, Green's Garage, against the defendant, Levi Pickett, to recover the sum of $12.00 for parts furnished and for repairs and labor on defendant's truck.   The Court of General Sessions rendered judgment in favor of the plaintiff for said amount and sustained the attachment.   The case was appealed to the Circuit Court by the defendant where a jury was demanded by him.   After a lengthy trial in the Circuit Court, the jury returned a verdict for plaintiff on both the summons and the attachment, which was approved by the trial judge, and upon defendant's motion for a new trial being overruled an appeal to this Court was prayed, granted and perfected.

It appears that Green's Garage, owned and operated by E. G. Billingslea, has been in business for several years, repairing automobiles and selling various accessories and parts in connection therewith, and that defendant's truck was repaired by plaintiff's employees at defendant's request.   Plaintiff's business is located just outside the corporate limits of the City of Chattanooga in a non-incorporated area of Hamilton County.

There were two defenses made to the suit, the defendant insisting (1) that he did not owe the debt sued for, and, therefore, no basis for a lien; and (2) that the plaintiff had not paid the proper privilege tax required by law.   On the alleged indebtedness the defendant admits in his brief "that there was some substantial evidence to support the verdict   *   *   *   and we shall not

say anything more on this proposition.'' Because of this admission, it is unnecessary for us to further consider the defendant's insistence that he did not owe the debt.

It is insisted that the trial court erred in refusing to sustain defendant's motion for a directed verdict made at the conclusion of all the proof, based on the plaintiff's failure to pay the proper privilege tax, penalty, etc., as required by Code, Section 1248.20(b) as follows:

''Persons selling at retail motor fuel, lubricants, new, used, or rebuilt automobile or truck tires, repairing or rebuilding automobile or truck tires, or tubes, or engaged in the business of selling or servicing motor driven vehicles with respect to tires, batteries, parts or accessories, or in washing, polishing, repairing or lubricating motor driven vehicles, shall pay the following privilege tax per annum for each such shop or station:

Each shop or station working two persons or less. .$15.00
Each shop or station working more than two persons
    and less than five............................ 20.00
Each shop or station working more than four persons and less than ten....................... 25.00

             *      *      *      *      *      *

Owners who work in said stations or shops shall be counted.

             *      *      *      *      *      *

''Each person operating a shop for repairing automobiles and trucks and not selling any of the items mentioned in the caption of this subdivision shall pay:

Each shop working two persons or less..........$ 5.00
Each shop working more than two persons and less
    than five...................................... 10.00

Each shop working more than four persons and less than ten............................... 15.00

\*     \*     \*     \*     \*.     \*

Owners who work in said shops shall be counted.''

It appears from the foregoing provisions of the statute that the fees are graduated according to the number of persons employed, the first portion thereof not only authorizing the license to sell at retail those articles enumerated therein, but providing also that he may wash, polish and repair motor driven vehicles. The last portion of the statute limits the licensee to making general repairs only.

Billingslea testified that in 1950 he purchased two privilege licenses in the name of Green's Garage from the County Court Clerk's Office, one license for repairing cars and retailing parts, and the other for the general repairing of automobiles, paying therefore the minimum amount required for each license under the statute where only two persons are employed. He said that the work was done on defendant's truck on or about January 15, 1950.

The Deputy County Court Clerk testified that the records of that office show that plaintiff purchased two privilege licenses for the year 1950, paying for each license the minimum amount required under the statute where only two persons are employed; that plaintiff paid $15.00 to the State and $15.00 to the County, or a total of $31.00 including fees, for an automobile dealer's license, and $5.00 to the State and $5.00 to the County, plus fees, or a total of $11.00, for an automobile repairer's license. This witness also testified that the automobile repairer's license which had been previously issued to plaintiff expired January 15, 1950, but that plaintiff, on May 19, 1950, paid double the amount due plus all penalties re-

quired by Code, Section 1248.142h, reinstating this license for one year from the date of said expiration. No question seems to have been made regarding the automobile dealer's license except with reference to the number of persons employed. Thus it appears from the proof that the plaintiff had purchased two licenses, one for "Persons selling at retail [etc.]'', as required by the first part of the statute, and the other for "repairing automobiles [etc.]'', as required by the last part of the statute.

Code, Section 1248.3 provides that the County Court Clerk is expressly designated to collect the taxes imposed on privileges and report same to the State Commissioner of Finance and Taxation. Under this section the County Court Clerk is given broad discretion in the performance of his duties, and where a tax has been collected and a license issued, as in the present case, "the license given by the county court clerk shall be sufficient evidence of a compliance with this law.'' Code, Section 1248.4.

It is urged that because plaintiff obtained licenses on the basis of employing only two persons when the proof shows that more than four were employed, that said licenses are invalid and plaintiff's claim is unenforceable. While it is inferred that Billingslea perpetrated a fraud upon the County Court Clerk by misrepresenting the number of persons employed by plaintiff, there was no positive proof to this effect.

■ ■ The purpose of the foregoing Statute, being a part of the Revenue Act of 1937, is to raise funds with which to operate the different departments of our State and County Governments. Under the proof the State and County have not lost any revenue nor has the plaintiff gained any advantage by purchasing two licenses instead of one, for the following reason: Plaintiff paid

$40.00 for the two licenses. Had this amount been properly applied under the first part of the Statute, the plaintiff could have employed as many as 5 persons as provided therein. Should the plaintiff's claim be declared unenforceable by the Courts where the proper amount of the license has been paid but improperly applied? We think not. To apply such a rule under the circumstances would be manifestly inequitable in the light of a substantial compliance with the law. Revenue laws are construed against the State and in favor of the taxpayer, and a substantial compliance therewith is all that is required. Furthermore, under each of the two licenses the plaintiff could employ two persons, including owner, without violating the provisions of the Statute.

Regarding the number of persons employed by plaintiff, Billingslea testified that as many as 5 had worked there at different times within the past year. On cross-examination he was asked:

"X 148 How many employees have you got out there? A. How many men, you mean I am working?

"X 149 Yes, I didn't ask you girls. A. In the whole outfit I works three men.

"X 150 You work three men? A. Yes, sir.

"X 151 Who are those three? A. Robert Bloodsaw and Buddy Ballot—

"X 152 How you spell that other name? A. I don't know. Ballot.

"X 153 Who? A. Ballot.

"X 154 And who else? A. Now, Amos L. Green, he works on the percentage. He works part time.

"X 155 He works there? A. Yes, sir.

"X 156 Those the only three? A. That is right

"X 157 Well, you work Willie B. Talley, that is four? A. That is my daughter.

"X 158 She works there? A. Well, she doesn't work full time—Just temporary. Just keeps the books, that is all.

"X 159 And who else now? You say George Carson works there? A. No, sir, he don't work there.

"X 160 He worked there the first of this year, didn't he. A. He cut up a few cars for me.

"X 161 Well, that is what I say? A. Yes, sir.

"X 162 George Carson the first of the year cut up some cars, you say? A. Yes, sir.

"X 163 Who else now works there? A. That is all.

"X 164 Who else? A. That is all.

"X 165 Your wife works there. You say she comes in the office and answers the 'phone? A. That being the case, Mr. Tillett, there are a lot of people come in and answer the telephone there.

"X 166 You have her engaged? A. I don't pay her.

"X 167 You don't pay her but she works there? A. She answers the telephone for me sometimes.

"X 168 Looks after your business,—makes contracts, doesn't she? A. No, sir, she don't make no contracts.

"X 169 Now, Robert Bloodsaw, Buddy Ballot, Amos L. Green, Willie B. Talley and George Carson,—now, that is, one, two, three, four, five, and you work there,—that is six with yourself, isn't it? A. I work there sure.

"X 170 Well, that makes six doesn't it? A. That is six.

"X 171 Six. A. Uh-huh.

"X 172 You will admit you have six men? A. Now now, no, sir. I admit there have been that many in this year, but not at one time.

"X 173 Bloodsaw was working there where this contract was made and before that? A. Yes, sir.

"X 174 Amos Green was working there? A. Yes, sir.

"X 175 Willie B. Talley worked there then, didn't she, and Buddy Ballot was working there? A. No, sir, he was not there then.

"X 176 Was he there before that? A. No, sir.

"X 177 Since then? A. We just employed him since then.

"X 178 Was Carson there then? A. No, sir. Carson didn't work but just a few days. He was cutting up some cars for me."

■ The number of persons employed by plaintiff presented a jury question, and under the proof the jury could reasonably conclude that not more than four, including the owner, were regularly employed.

Complaint is made that the Court erred in charging the jury as follows: "Now, it is undisputed here that this plaintiff paid one tax—automobile tax of $31.00 for himself under two persons or less, and he paid taxes of $11.00, which is for two persons or less for repairing automobiles."

■ Inasmuch as this portion of the Court's charge conformed with the proof and the law applicable to the respective licenses issued plaintiff, this assignment is without merit.

■ Under assignment 5 it is insisted that the Court erred in charging the jury as follows: "* * * but you will also go further than that, and determine whether or not the plaintiff has paid the proper privilege tax."

Inasmuch as there was a dispute over the number of persons employed by plaintiff, it was a question of law and fact as to whether or not "the plaintiff had paid the proper privilege tax," and this assignment is also without merit.

Under assignments 6, 7 and 8 the defendant complains of other portions of the Court's charge with reference to the number of persons employed by plaintiff and whether or not plaintiff had paid the proper privilege taxes as required by the statute. It appears to us that none of these alleged matters complained of were prejudicial to the defendant and these assignments are overruled.

Assignment No. 9 complaining of the Court's action in failing to separate the account and the attachment from the privilege tax feature of the case will be overruled, because it is not pointed out where this portion of the charge affirmatively affected the results of the trial.

By assignment 10 it is urged that the court and plaintiff's attorney prejudiced the jury against the defendant by referring to the case in the presence of the jury as being a small law suit involving the sum of $12.00. Since the plaintiff filed the suit, it appears to us that any remarks made by either the court or plaintiff's attorney regarding the amount sued for reflected unfavorably upon the plaintiff for bringing said suit rather than upon the defendant for defending it. Under Code, Section 10654 this Court will not set aside a judgment or grant a new trial unless "it shall affirmatively appear that the error complained of has affected the results of the trial."

Admittedly this case has given us much concern. But after reading portions of the record several times we have concluded that no error appears that would justify a reversal of the case. Accordingly the judgment below will be affirmed at defendant's costs, and the case will be remanded for the enforcement of the lien.

McAmis and Hale, JJ., concur.